UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ORLANDO MITCHELL,

      Plaintiff,                    CIVIL ACTION NO. 16-cv-10247

      v.                             DISTRICT JUDGE NANCY G. EDMUNDS

DANIEL BARSTOLE, et al.,        MAGISTRATE JUDGE MONA K. MAJZOUB

      Defendants.
_____/


**REPORT AND RECOMMENDATION**

Plaintiff Orlando Mitchell, a prisoner at the St. Louis Correctional Facility, filed this *pro se* civil rights action on September 3, 2015, in the Western District of Michigan. (Docket no. 1.) He named the "State of Michigan City of Kalamazoo," the Michigan Department of Corrections ("MDOC"), Corrections Officer Daniel Bierstetel,[1] and Corrections Officer Dustin Caballero as defendants. (*Id.*) On January 22, 2016, Magistrate Judge Ellen Carmody from the Western District of Michigan entered an Order of Partial Dismissal and Transfer. (Docket no. 8.) The only remaining defendants are the corrections officers. (*Id.* at 2.) Plaintiff alleges that Defendant Bierstetel sexually assaulted him during a strip search and that Defendant Caballero sexually harassed him by observing him using the bathroom and by making inappropriate comments. (Docket no. 1 at 3-5.) Plaintiff further alleges that Defendant Caballero threatened to have him physically assaulted. (*Id.* at 5.)

Before the Court is Defendants' Motion for Summary Judgment. (Docket no. 17.) Plaintiff filed a Response to the Motion (docket no. 18), and Defendants filed a Reply (docket

---

[1] Officer Bierstetel's name appears in the Complaint and therefore on the docket as "Barstole."

1

no. 19.) Plaintiff then filed a second Response. (Docket no. 20.) Also before the Court is Plaintiff's Motion to Subpoena Video Surveillance (docket no. 21), to which Defendants have not responded. All pretrial matters have been referred to the undersigned for consideration. (Docket no. 14.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation.

I.   RECOMMENDATION

For the reasons that follow, it is recommended that Defendants' Motion for Summary Judgment (docket no. 17) be **GRANTED** and that Plaintiff's Motion to Subpoena Video Surveillance (docket no. 21) be **DENIED** as moot. Accordingly, it is recommended that this matter be dismissed without prejudice in its entirety.

II.  REPORT

   A.  Summary Judgment Standard

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002)*.

### B. Analysis

Defendants argue that summary judgment is appropriate because the undisputed facts show that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA) before filing this lawsuit. (Docket no. 17.) The PLRA requires that a prisoner exhaust all administrative remedies before filing a Section 1983 action. Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds

out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (citation omitted). Dismissal for failure to exhaust administrative remedies is without prejudice. *See Boyd v. Corrs. Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2004).

MDOC's administrative policies (*see* docket no. 17-2) require a prisoner to file a Step I grievance within five days of attempting to informally resolve the grievable issue with prison staff. MDOC Policy Directive 03.02.130(V). The grievance must include information regarding the facts of the issue being grieved (i.e., who, what when, where, why, how), and the dates, times, places, and names of the individuals involved. MDOC Policy Directive 03.02.130(R). MDOC is required to respond within fifteen business days, unless an extension is granted. MDOC Policy Directive 03.02.130(X). If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, within ten business days of receipt of the response or, if no response is received, "within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(BB). A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . , to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(FF). A prisoner's administrative remedies are exhausted once his complaints have been grieved "through all three steps of the grievance process in compliance with [the] policy." MDOC Policy Directive 03.02.130(B).

In support of their position, Defendants attach a copy of Plaintiff's Step III Grievance Report, which shows that Plaintiff has not filed any Step III appeals regarding the incidents at

4

issue in this case. (Docket no. 17-3.) They argue that the Report establishes Plaintiff has not exhausted his administrative remedies.

Regarding his claims against Defendant Caballero, Plaintiff concedes he did not exhaust his administrative remedies by completing the grievance process and therefore summary judgment in favor of Defendant Caballero is appropriate. (Docket no. 20 at 1.) Regarding his claims against Defendant Bierstetel for sexual assault, however, Plaintiff argues that he was not required to complete the grievance process. He generally cites MDOC policy Directive 03.03.140, "Prohibited Sexual Conduct Involving Prisoners."[2] (Docket no. 20 at 2.) Plaintiff seems to rely on paragraph (W) in particular, which provides:

> Prisoners may report allegations of [sexual misconduct, harassment, or overfamiliarity], including threats of such conduct and retaliation for reporting such conduct, verbally or in writing to any Department employee, through the MDOC Sexual Abuse Hotline, through the prisoner grievance process, or through the Legislative Corrections Ombudsman. If reported verbally to an employee, the employee shall document it in writing as soon as possible and report it to appropriate supervisory staff. Prisoners also may report such allegations to the PREA Administrator either in writing or through the sexual assault hotline. When receiving any report of sexual abuse or harassment, regardless of the source, staff shall promptly document and forward the complaint to the appropriate supervisory staff for investigation.

MDOC Policy Directive 03.03.140(W); *see* docket no. 19-3 at 5. Plaintiff attaches a Prisoner Notification of Sexual Abuse and Sexual Harassment Investigative Findings and Action form, which establishes that he did report the incident with Defendant Bierstetel to someone at MDOC.[3] (Docket no. 18 at 5.)

---

[2] In his first Response to Defendants' Motion for Summary Judgment (docket no. 18), Plaintiff cited MDOC Policy Directive 02.03.100, "Employee Discipline." He did not, however, refer to any particular paragraph or subsection. The undersigned reviewed the Policy Directive and could not discern any relevance to Plaintiff's claims.

[3] The undersigned notes that the Report provides: "A thorough investigation into your complaint was completed on 2/26/16. The investigation found NO EVIDENCE to support that the alleged conduct occurred." (Docket no. 18 at 5.)

As Defendants stress in their Reply, however, paragraph (Z) of Policy Directive 03.03.140 specifically states that, "[c]omplaints filed by a prisoner regarding [sexual misconduct, harassment, or overfamiliarity] shall serve to exhaust a prisoner's administrative remedies *only when filed as a grievance through all steps of the grievance process in compliance with PD 03.02.130 'Prisoner/Parolee Grievances*.'" MDOC Policy Directive 03.03.140(Z) (emphasis added). This point is reiterated in MDOC Policy Directive 03.02.130(B). Thus, while a prisoner may make report sexual misconduct through a variety of channels, the prisoner must go through the formal grievance process in order to exhaust the administrative process before proceeding to file suit in federal court. *See Koetje v. Norton*, no. 13-cv-12739, 2014 WL 4705432, at *3 (E.D. Mich. June 18, 2014) ("Any allegations of prohibited sexual conduct involving prisoners falls under the jurisdiction of the Internal Affairs Division. To properly exhaust remedies, [MDOC Policy Directive 03.03.140] explicitly requires that inmates file grievances through the . . . 03.02.130 grievance policy *in addition to* Internal Affairs investigations.").

Moreover, MDOC Policy Directive 03.02.130(F) lists five types of "non-grievable issues." These include "the content of [a] policy or procedure," "[d]ecisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules" and "issues directly related to the hearing process," decisions "made by the Parole Board" and in "minor misconduct hearings," and "[i]ssues not within the authority of the Department to resolve." *Id.* Sexual assault, misconduct, and harassment are not listed as non-grievable issues.

Plaintiff also argues that Defendants "refused [his] right to due process to exhaust remedies by the grievance system." (Docket no. 18 at 2.) He states that prison officials have discretion over whether to give a prisoner a grievance form. (*Id.*) However, he fails to allege that he ever requested the form or that Defendants actually refused to give him the form.

In order to exhaust the administrative remedies available to him regarding his claims, Plaintiff was required to complete the grievance process described in Policy Directive 03.02.130, "Prisoner/Parolee Grievances." It is undisputed that Plaintiff failed to do so. Defendants' Motion for Summary Judgment (docket no. 17) should therefore be granted.

Additionally, as noted above, Plaintiff has filed a Motion to Subpoena Video Surveillance, which remains outstanding. (Docket no. 21.) He claims that the video footage contains evidence to support his claims against Defendant Bierstetel. (*Id.*) Nevertheless, nothing on the tape will change the fact that Plaintiff's claims are barred at this time by his failure to exhaust his administrative remedies under the PLRA. Accordingly, Plaintiff's Motion should be denied as moot.

### C. Conclusion

For the reasons stated above, it is recommended that Defendants' Motion for Summary Judgment (docket no. 17) be **GRANTED** and that Plaintiff's Motion to Subpoena Video Surveillance (docket no. 21) be **DENIED** as moot. Accordingly, it is recommended that this matter be dismissed without prejudice in its entirety.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: October 21, 2016        s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: October 21, 2016        s/ Lisa C. Bartlett
                               Case Manager